**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-11-0000067**
**21-MAR-2012**
**09:33 AM**

NO. CAAP-11-0000067

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


In the Matter of the Application of
HAWAII ELECTRIC LIGHT COMPANY, INC.
For Approval of Rate Increases and
Revised Rate Schedules and Rules

_____

KEAHOLE DEFENSE COALITION, INC.,
a Hawaiʻi nonprofit corporation,
Participant and Appellant,
v.
PUBLIC UTILITIES COMMISSION OF THE STATE OF HAWAIʻI,
Appellee,
and
HAWAII ELECTRIC LIGHT COMPANY, INC.,
Applicant and Appellee,
and
DIVISION OF CONSUMER ADVOCACY, DEPARTMENT OF COMMERCE AND
CONSUMER AFFAIRS OF THE STATE OF HAWAII,
Appellee

APPEAL FROM THE PUBLIC UTILITIES COMMISSION
OF THE STATE OF HAWAIʻI
(DOCKET NO. 05-0315)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding J., Fujise and Leonard, JJ.)

Intervenor-Appellant Keahole Defense Coalition, Inc. (KDC) appeals from the "Order Approving Hawaii Electric Light Company, Inc.'s Revised Tariff Sheets and Rate Schedules, Filed on November 12, 2010, as Amended" entered by Appellee State of Hawaiʻi Public Utilities Commission (PUC) on January 7, 2011

(January 7, 2011 Order). PUC found that the revised tariff sheets and rate schedules filed by Appellee Hawaii Electric Light Company, Inc. (HELCO) on November 12, 2010 and amended on November 24, 2010 complied with the tariff and rate changes authorized by PUC in its October 28, 2010 Decision and Order (Decision and Order).[1] In the Decision and Order, PUC denied HELCO's initial request to increase its revenues by $29,931,100, or 9.24%, over 2006 test year rates and instead, approved an increase in revenues of $24,564,500, or 7.58%, over 2006 test year rates.

On appeal, KDC contends PUC erred in granting the January 7, 2011 Order affirming PUC's Decision and Order. KDC contends PUC erred when it:

(1) approved the April 5, 2007 and May 15, 2007 stipulated settlements (Stipulated Settlements) because PUC effectively delegated its statutory responsibilities to HELCO and the Division of Consumer Advocacy of the Department of Commerce and Consumer Affairs (Consumer Advocate);

(2) found that combustion turbine unit 5 (CT-5) was "used and useful" pursuant to HRS § 269-16 (2007 Repl.) because PUC failed to render specific findings as to what part of CT-5's capacity was "used and useful";

(3) allowed certain costs to be added to the base rate, including (a) land use entitlement costs, (b) noise attenuation costs, (c) Allowance For Funds Used During Construction (AFUDC) costs, and (d) other miscellaneous costs; and

(4) found that HELCO acted "expeditiously" rather than evaluating if HELCO acted "prudently."

---

[1] The January 7, 2011 Order is the final appealable order in this case. However, KDC may challenge the October 28, 2010 Decision and Order because "An appeal from a final judgment brings up for review all interlocutory orders not appealable directly as of right which deal with issues in the case." Ueoka v. Szymanski, 107 Hawai'i 386, 396, 114 P.3d 892, 902 (2005). (citation and internal quotation marks omitted).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude KDC's appeal is without merit.

Rate-making decisions by PUC are governed by HRS § 269-16, which requires all rates and charges to be "just and reasonable." "The 'unjust and unreasonable' language does not represent a separate standard of review, but rather represents the application of the abuse of discretion standard to the statutory scheme underlying PUC's rate-making powers." Paul's Elec. Serv., Inc. v. Befitel, 104 Hawai'i 412, 419, 91 P.3d 494, 501 (2004). Although PUC decisions "are not presumptively valid[,] . . . an agency's discretionary determinations are entitled to deference, and an appellant has a high burden to surmount that deference[.]" Id.

KDC argues that PUC erred in its Decision and Order because it "improperly delegated its regulatory authority to the parties" when it adopted the Stipulated Settlements between HELCO and the Consumer Advocate. PUC's Decision and Order stated that the "Parties' agreements set forth in the [Stipulated Settlements] are reasonable, and are therefore approved." KDC argues "PUC confined its role to reviewing and approving" the Stipulated Settlements, thus improperly delegating its regulatory authority and abusing its discretion "because the outcome below is 'unreasonable and unjust.'"

PUC's reliance on the Stipulated Settlements is subject to a degree of deference. "[T]he reasonableness of utility rates is not determined by a fixed formula but is a fact question requiring the exercise of sound discretion by [PUC]." In re Hawaiian Tel. Co., 67 Haw. 370, 382, 689 P.2d 741, 749 (1984) (internal quotation marks, citation, and brackets in original omitted). In the instant case, KDC argues that accepting the

3

Stipulated Settlements was an improper method of determining the outcome of a rate proceeding. However,

> [i]t is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry . . . is at an end. The fact that the method employed to reach that result may contain infirmities is not then important.

In re Hawaiian Tel. Co., 67 Haw. at 38, 689 P.2d at 749 (quoting Fed. Power Comm'n v. Hope Natural Gas Co., 320 U.S. 591, 602, 64 S. Ct. 281, 288 (1944)). PUC's reliance on the Stipulated Settlements in issuing its Decision and Order is not enough to show that the rate itself is unjust and unreasonable.

KDC next argues that PUC did not make a legally sufficient finding as to the "exact portion" of CT-5's capacity that is "used and useful" pursuant to HRS § 269-16(b).

A public utility is limited to "a fair return on the property of the utility actually used or useful for public utility purposes." HRS § 269-16(b). "The determination of a proper rate base thus entails a valuation of the property of the utility devoted to public utility purposes on which the public utility is allowed to earn an appropriate rate of return." In re Puhi Sewer & Water Co., Inc. 83 Hawaiʻi 132, 137, 925 P.2d 302, 307 (1996) (citation and internal quotation marks omitted).

In the instant case, PUC clearly determined whether CT-5 was used and useful. Specifically, PUC found:

> The construction, completion, and commercial operation of CT-4 and CT-5 is the result of HELCO's initial capacity plans which estimated the need for additional increments of generating capacity during the early 1990s due to forecasted load growth and the planned retirements of older generating units. The record reveals that CT-4 and CT-5: (1) are completed and have been in commercial operation since June 2004; (2) provide HELCO with approximately 44 MWs of firm

power capacity; (3) have increased HELCO's ability to schedule crucial maintenance outages on other units, while continuing to maintain the margin of load required for reliable electric utility service; (4) have decreased transmission system losses; (5) improved transmission reliability on HELCO's grid; and (6) have fast-start capabilities. Moreover, CT-5 is utilized to maintain an adequate generating reserve margin for HELCO's system. Furthermore, as represented by HELCO, CT-5 provides other attendant benefits due to its location at Keahole, which include:

. . . . (1) helping to mitigate potential transmission line overloads in the event of outages of certain transmission lines; (2) helping to reduce the need to install an additional cross island transmission line to carry power from East Hawaii, where most of the generating resources are located, to West Hawaii, where about one-half of the electrical power on the island is consumed; (3) reducing fuel costs by reducing the amount of transmission system losses and by providing more efficient generation at Keahole that is used to mitigate potential transmission line overloads; (4) facilitating and reconductoring of certain transmission lines; and (5) helping to accommodate renewable energy on the system.

Upon thorough review, the [PUC] finds that HELCO has met its burden of proving that CT-4 and CT-5 are used and useful for public utility purposes.

(citation omitted).

PUC presented sufficient facts and findings to support a determination that CT-4 and CT-5 were "used and useful" under HRS § 269-16(b).

KDC next argues that PUC erred in allowing increased costs associated with HELCO's choice of land use entitlement to be added to HELCO's base rate. KDC contends HELCO knowingly assumed the risks of project delay associated with its choice of applying for a Conservation District Use Application (CDUA) instead of seeking a land reclassification and then a rezoning. KDC argues that PUC applied a subjective, rather than objective, standard to determine whether HELCO acted prudently. KDC specifically challenges the following findings made by PUC in its Decision and Order:

5

5. HELCO's decision to apply for a CDUA instead of seeking a reclassification and then rezoning of the Keahole land ("Reclassification/Rezoning"), as part of its efforts to expedite the installation of CT-4 and CT-5, was reasonable and prudent under the circumstances. As outlined in HELCO's Rebuttal Testimony, while both processes involve discretionary actions by a decision-making body, the Reclassification/Rezoning process involves sequential processing and decision-making by two entities, reclassification under the Land Use Commission ("LUC") and then rezoning by the Hawaii County Council, as opposed to one proceeding for the CDUA, under the BLNR. Moreover, while a CDUA process is limited to a period of 180 days from the date that a completed application is accepted, at that time, reclassification by the LUC was not limited by any mandatory action period; nor was time limitations placed on the Hawaii County Council. Finally, while both processes are subject to judicial review, the Reclassification/Rezoning process is subject to judicial review after each discretionary action is taken (LUC and then Hawaii County Council), as opposed to once following BLNR's action under the CDUA.

6. HELCO appears to have had no control over, or the ability to avoid or to fully predict the actions and decisions of project opponents, permitting agencies, and the courts, which had the ultimate effect of delaying HELCO's efforts in timely installing and completing the construction of both units for commercial operation. For instance, in 1994, HELCO had no ability to predict the Department of Land and Natural Resources' difficulty in scheduling a contested case hearing regarding HELCO's CDUA application. Specifically, HELCO could not have predicted that the first hearings officer assigned to the case would have excused himself or that that [sic] the second hearings officer would fall seriously ill." In addition, upon deciding to go forward before the BLNR in May 1994, without a contested case hearing, HELCO could not have predicted that the BLNR would not be able to cast sufficient votes to approve or deny HELCO's CDUA application, resulting in HELCO obtaining a "default entitlement" by operation of law to use the property as set forth in the application.

As stated earlier, rate-making decisions by PUC are governed by HRS § 269-16, which requires that "[a]ll rates, fares, charges, classifications, schedules, rules, and practices made, charged, or observed by any public utility or by two or more public utilities jointly shall be just and reasonable[.]" HRS § 269-16(a). "The 'unjust and unreasonable' language does

6

not represent a separate standard of review, but rather represents the application of the abuse of discretion standard to the statutory scheme underlying PUC's rate-making powers." Paul's Elec. Serv., Inc., 104 Hawai'i at 419, 91 P.3d at 501.

In the instant case, PUC's finding that costs associated with HELCO's CDUA could be factored into the rate base was not an abuse of discretion. PUC stated that "HELCO's decision to apply for a CDUA instead of seeking a reclassification and then rezoning . . . was reasonable and prudent under the circumstances." Because PUC applied the proper objective standard and found that HELCO acted reasonably in seeking a CDUA, PUC did not err in allowing land use entitlement costs to be factored into HELCO's base rate.

KDC similarly argues that construction costs associated with bringing the Keahole Generating Plant into compliance with noise level regulations for the conservation district should not be included as costs for installing CT-4 and CT-5. KDC's argument that noise attenuation costs were unnecessarily incurred by HELCO's decision to apply for a CDUA, instead of a reclassification and rezoning, is an extension of its above-analyzed argument over CDUA costs. KDC also contends that the decision to build CT-4 and CT-5 in a conservation district was imprudent.

PUC determined that "HELCO appears to have followed applicable existing standards regarding noise limitations at the Keahole Generating Plant," and "KDC's general assertion that the cost for CT-4 and CT-5 are imprudently incurred appears to have little merit[.]" PUC acted within its discretion when it found that HELCO's choice to pursue a CDUA was prudent. PUC weighed the benefits of applying for a CDUA with the costs (including noise attenuation costs) and found that such costs were reasonable. Because HRS § 269-16 allows a utility to charge

7

rates and fees which are "just and reasonable", and because PUC found that the costs associated with a CDUA, including noise attenuation costs, were reasonable, PUC did not err in allowing noise attenuation costs to be added to HELCO's rate base.

KDC next challenges PUC's decision to include the accrual of AFUDC in the rate base increase.[2] KDC argues that PUC erred in allowing costs stemming from "constant interruptions that prevented the project from moving on a 'planned progressive basis'" to be factored into AFUDC costs because such costs "were all due to the lack of 'prudence' on the part of . . . HELCO's managers[.]" As in the previously-discussed arguments, KDC asserts that these delays arose out of "HELCO's choice of land entitlement[.]"

In its Decision and Order, PUC made the following finding regarding AFUDC costs:

> 8. HELCO correctly applied established accounting principles and its own policies in its calculation of AFUDC. Although unusual, the accrual of AFUDC for CT-4 and CT-5 appears consistent with prior commission proceedings involving capital improvement projects. Moreover, on December 1, 1998, HELCO voluntarily ceased the accrual of AFUDC for both units. HELCO represents that this decision:

---

[2] PUC has previously held that:

> When utilities are not allowed to earn a return to cover their construction financing costs during the construction period, they are allowed to capitalize the financing costs for future recovery through an allowance for funds used during construction (AFUDC). This capitalized cost, which is added to the basis of utility plant under construction, will ultimately be include in the rate base as a component of plant in service, thereby earning a return and being recovered through depreciation allowances.

In re Hawaiian Electric Co., Inc., Hawaii Electric Light Co., Inc., and Maui Electric Co., Ltd, (Hawaiʻi P.U.C. May 3, 2005) (Decision and Order No. 21798) (quoting R. Hahne, G. Aliff, and Deloitte & Touche LLP, Accounting for Public Uilities, § 4.04(4), at 4-16 (2004)).

8

> (A) was based on the length of the delays and uncertainty over potential further delays due to the November 1998 U.S. Environmental Protection Agency, Environmental Appeals Board's remand of the PSD permitting proceeding to DOH; and (B) has resulted in its shareholders bearing the entire carrying costs of the construction work in progress from December 1998 until the in-service dates of both units (estimated $52.6 million in foregone AFUDC).

"Although the actual mechanics of computing AFUDC may be challenged, there is little debate over the propriety of including AFUDC as a component of construct costs[.]" In re Hawaiian Electric Co., Inc., Hawaii Electric Light Co., Inc., and Maui Electric Co., Ltd, (Hawai i P.U.C. May 3, 2005) (Decision and Order No. 21798) (quoting R. Hahne, G. Aliff, and Deloitte & Touche LLP, Accounting for Public Uilities, § 4.04(4), at 4-16 (2004)).

PUC's finding that "HELCO correctly applied established accounting principles" in its calculation of AFUDC is supported by HELCO's testimony that "AFUDC should begin when expenditures commence on a project, in accordance with the long-standing practice in Hawaii[,]" and "delays beyond the control of management are considered to be reasonable." Because the method used in determining AFUDC costs was in accord with generally accepted accounting practices, and because PUC found that the delays in construction were not the fault of HELCO, PUC did not err in allowing AFUDC costs to be factored into HELCO's base rate.

KDC further contends that PUC erred when it "disposed of . . . KDC's remaining points and dismissed the same as having 'little merit.'" KDC alleges that PUC did not address KDC's arguments concerning an air permit and the availability of other options to provide additional capacity. This argument appears to challenge the following finding made by PUC in its Decision and Order:

> KDC's general assertion that the cost for CT-4 and CT-5 are imprudently incurred appears to have little merit, and its

recommendation to disallow certain costs associated with the units including costs related to permitting/legal, noise mitigation, and AFUDC is unsupported by the record. In response to KDC's cost concerns, HELCO asserts that all costs would have been different had a different expansion option been selected, and that this is not a basis for disallowing the costs associated with the selected expansion option. The [PUC] agrees.

KDC's argument that PUC erred in not considering other costs is erroneous. The above cited finding by PUC indicates that PUC addressed all cost concerns raised by KDC. Furthermore, KDC fails to cite to any authority that would require PUC to discuss what other options were available to provide additional capacity in this proceeding. As such, PUC did not err in finding that the cost items complained of by KDC are meritless.

KDC argues that "PUC's finding that . . . HELCO acted 'expeditiously' is not relevant to any of the issues raised below" and the proper question is whether HELCO acted prudently. It is true that PUC found HELCO acted expeditiously, but PUC also made the requisite determination that HELCO acted prudently. PUC determined that "KDC's general assertion that the cost for CT-4 and CT-5 are imprudently incurred appears to have little merit, and its recommendation to disallow certain costs associated with the units including costs related to permitting/legal, noise mitigation, and AFUDC is unsupported by the record."

Even if PUC was not required to make a finding of whether HELCO acted expeditiously, PUC made specific findings as to the prudence of HELCO's actions. Thus, PUC did not err in finding that HELCO acted expeditiously.

KDC presented five remaining points on appeal not directly addressed above. Each of these points simply re-allege or reiterate the points already discussed above. For example, in Point Seven, KDC argues that PUC erred in finding that the $12.898 million write-down in costs was reasonable. KDC argues this finding was erroneous "in light of . . . PUC's errors

described in Points One, Two, Three, Four, Five and Six[.]"
Likewise, KDC argues in Points Eight through Ten and Point Twelve
that PUC erred "in light of" the points already discussed.
Points on appeal Seven, Eight, Nine, Ten, and Twelve are premised
on a conclusion that PUC erred in the other points addressed
above. Because we conclude PUC did not err in any of the points
on appeal already analyzed, we conclude KDC's remaining points on
appeal are also without merit.

Therefore,

IT IS HEREBY ORDERED that the "Order Approving Hawaii
Electric Light Company, Inc.'s Revised Tariff Sheets and Rate
Schedules, Filed on November 12, 2010, as Amended" entered by
State of Hawaiʻi Public Utilities Commission on January 7, 2011
is affirmed.

DATED: Honolulu, Hawaiʻi, March 21, 2012.

On the briefs:

Michael J. Matsukawa
for Participant and Appellant
Keahole Defense Coalition, Inc.

Presiding Judge

Thomas W. Williams, Jr.
Peter Y. Kikuta
Lisa A. Bail
Abigail M. Holden
Adam K. Robinson
(Goodsill Anderson Quinn &
Stifel) for Applicant and Appellee
Hawaii Electric Light
Company, Inc.

Associate Judge

Jon S. Itomura
Lane H. Tsuchiyama
for Appellee Division of Consumer
Department of Commerce and
Consumer Affairs.

Associate Judge